**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| RICARDO CLEMONS, | ) | |
| Plaintiff, | ) | |
| v. | ) | **Case No.:** |
| FORT MYER CONSTRUCTION CORPORATION and MARK FUHRMAN, | ) | **JURY TRIAL DEMAND** |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Ricardo Clemons, for his Complaint against Defendants Fort Myer Construction Corporation and Mark Fuhrman, states as follows:

## NATURE OF THE ACTION

Ricardo Clemons brings this action against Defendant Fort Myer Construction Corporation ("Fort Myer") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and against Fort Myer and Defendant Mark Fuhrman ("Fuhrman") under the District of Columbia Human Rights Act, D.C. Code § 2-1402.01 *et seq.* ("DCHRA"), to correct unlawful employment practices on the basis of race and retaliation, and to provide appropriate relief to Plaintiff, who was adversely affected by such practices. Plaintiff worked in the electrical division of Fort Myer for several years. As detailed below, after Plaintiff complained about racially offensive remarks made by Fuhrman, the General Superintendent of Fort Myer's Electrical Division, Fort Myer and Fuhrman subjected Plaintiff to a hostile work environment, including assigning Plaintiff life-threatening work, and ultimately discharged Plaintiff, all because of his race and in retaliation for reporting

racially discriminatory conduct by Fuhrman. Plaintiff seeks economic damages, compensatory damages, punitive damages, and reasonable attorney's fees and costs for Defendants' intentional and unlawful discrimination against him on the basis of his race.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1331 because it involves a federal question arising under the Constitution and laws of the United States. Supplemental jurisdiction over Plaintiff's pendent state-law claims is conferred by 28 U.S.C. § 1367.

2. Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims occurred in the District of Columbia, and Defendant Fort Myer is headquartered and licensed to do business in the District of Columbia.

## PARTIES

3. Plaintiff currently works as a project manager for a sustainable energy company and is a resident of the State of Maryland. Plaintiff is African American.

4. Fort Myer is a corporation that is headquartered in, and is licensed to conduct business in, and in fact conducts business in, the District of Columbia.

5. Upon information and belief, Fuhrman is currently employed in Fort Myer's Electrical Division as a General Superintendent. He is also a Master Electrician. At all times relevant to this Complaint, Fuhrman was Plaintiff's second-level supervisor, and thereby was an agent of Fort Myer and exercised management authority over Plaintiff. Fuhrman is Caucasian.

## FACTUAL ALLEGATIONS

6. Plaintiff was initially hired by Fort Myer as an electrical apprentice within Fort Myer's Electrical Division in or about early January 2011.

7. Upon information and belief, when Plaintiff was hired by Fort Myer, there were approximately 17 African American electricians, groundsmen, and/or apprentices employed within Fort Myer's Electrical Division. Upon information and belief, immediately before his termination from employment with Fort Myer, Plaintiff was the last African American employee working as an electrician, groundsman, and/or apprentice in Fort Myer's Electrical Division.

8. On or about June 24, 2014, Plaintiff was working as an employee of Fort Myer's Electrical Division at a job site in the District of Columbia. Plaintiff had been assigned to install traffic signals at that job site. Another Fort Myer employee, not Plaintiff, was assigned to perform core drilling with a "wet" drill in a PEPCO vault around submerged high voltage cables at that job site.

9. Performing core drilling around submerged high voltage cables with a "wet" drill is an extremely dangerous task that requires, among other things, confined space training and certification; core drilling training; and training in the use of a "wet" drill, before undertaking such drilling. If a person mistakenly drills into a submerged high voltage cable, death is virtually certain to occur. As of June 24, 2014, Plaintiff had not received confined space training or certification, nor was he trained to perform core drilling around submerged high voltage cables. Plaintiff also had not received any training on using a "wet" drill.

10. Fuhrman was present at the same job site for a portion of the day on or about June 24, 2014, where Plaintiff was assigned to install traffic signals. In Plaintiff's presence at the job site that day, Fuhrman made two racist comments that displayed his prejudice against African

Americans. Rather than remain silent about these comments, Plaintiff immediately responded to Fuhrman at the job site, making clear to Fuhrman that he was upset by Fuhrman's racist statements. Shortly after this incident, Plaintiff also notified his immediate supervisor that he was upset about Fuhrman's racist comments.

11. On or about June 25, 2014, Fuhrman informed Plaintiff's immediate supervisor that Plaintiff would need to return to the job site and go into the PEPCO vault to do core drilling work using a "wet" drill. Fuhrman gave this order in retaliation for Plaintiff responding to his racist comments the previous day.

12. Plaintiff immediately expressed his concerns to both his immediate supervisor and to Fuhrman about being assigned to perform core drilling in the PEPCO vault near submerged high-voltage cables. Plaintiff told Fuhrman that he was not trained to do this dangerous work. Fuhrman replied, "You'll be fine. It's like going swimming for the first time."

13. On or about Friday, June 27, 2014, after Fuhrman reiterated that Plaintiff would be required to do core drilling in the PEPCO vault around submerged high-voltage cables, Plaintiff refused to perform that assignment. Fuhrman then issued a memorandum of insubordination against Plaintiff, and suspended him for a day without pay.

14. On or about the following Monday, June 30, 2014, Fuhrman attempted to terminate Plaintiff. Later in the morning on June 30, 2014, Plaintiff spoke with Fort Myer's head of Human Resources, Michael Caro ("Caro"). In that conversation, Plaintiff complained to Caro that Fuhrman had made racist remarks about African Americans a few days earlier. Caro then instructed Plaintiff to return home while they determined the next steps of his employment. Upon information and belief, Fuhrman expressed his displeasure with Plaintiff's continued employment and threatened to resign if Plaintiff was not terminated.

15. Having been unable to terminate Plaintiff as he had desired on June 30, 2014, Fuhrman then embarked on a campaign of harassment and intimidation against Plaintiff under the guise of "training" for the first two weeks of July 2014, ostensibly to prepare him to perform core drilling in the PEPCO vault. In reality, this was an effort to create a hostile work environment for Plaintiff in the hope that he would resign. Among other things during this two-week period, Fuhrman forced Plaintiff to take OSHA 30 training while confined in a small, closet-like space. The space had no windows, no ventilation, and no air conditioning. Plaintiff was only permitted to take bathroom breaks with prior notification to, and permission from, Fuhrman. These were not the conditions under which OSHA 30 training had been provided to Caucasian employees in Fort Myer's electrical division previously.

16. During this two-week "training" period, Plaintiff did not receive training for drilling around high voltage cables submerged in water in a vault. Nevertheless, Fuhrman made it clear to Plaintiff that, upon the conclusion of this supposed "training," he would be required to perform core drilling in the PEPCO vault near submerged high-voltage wires – a task for which Plaintiff still was not properly trained. Fuhrman hoped that Plaintiff would again refuse to do such core drilling after the "training" period, which would then, he believed, provide him and Fort Myer with a pretext to terminate Plaintiff. However, the anticipated second confrontation regarding Plaintiff's assignment to perform core drilling in the PEPCO vault never materialized because, as explained below, Fort Myer and Fuhrman seized on what they considered to be another opportunity to terminate Plaintiff.

17. In or about late June 2014, Plaintiff submitted a request for three days of leave beginning on July 16, 2014. Fuhrman subsequently claimed to Plaintiff that he had lost Plaintiff's leave request and asked Plaintiff to submit another leave slip, which Plaintiff did in or around early

July 2014. Continuing with his campaign of harassment and intimidation with the goal of creating a sufficiently hostile work environment such that Plaintiff would voluntarily resign, on or about July 11, 2014, Fuhrman refused Plaintiff's request for leave beginning on July 16, 2014. This was also an act of discrimination based on Plaintiff's race. In the past, Fuhrman and Fort Myer had granted similar requests for leave by Caucasian employees.

18. On the morning of July 16, 2014, Plaintiff saw a doctor about an injury. The doctor provided Plaintiff with a note requesting that Plaintiff be excused from work beginning on July 16, 2014, with regular activity to resume on July 19, 2014. Plaintiff then called Fuhrman and told him that he had a doctor's note excusing him from work, and offered to provide a copy of the doctor's note to Fuhrman. Fuhrman replied that Plaintiff did not need to give him a copy of the doctor's note, and that he would see Plaintiff the following Monday.

19. Later in the day on or about July 16, 2014, Plaintiff heard from another Fort Myer employee that his employment with Fort Myer had been terminated. However, Plaintiff did not receive any formal notification about the status of his employment from Fort Myer until the following Monday, July 21, 2014.

20. On July 21, 2014, Plaintiff returned to work. When Plaintiff arrived at Fort Myer's office in the District of Columbia, Fuhrman and Caro notified Plaintiff that he was being terminated from his employment. Nobody at Fort Myer ever asked Plaintiff to provide a copy of the doctor's note he had obtained on July 16, 2014. Upon information and belief, in the past, Fort Myer had not terminated Caucasian employees for missing work when they had notes from doctors that provided justification for such absences based on injuries.

21. Plaintiff's termination was the culmination of Fuhrman's month-long plan to get rid of Plaintiff as an employee of Fort Myer based on Plaintiff's race.

22. Plaintiff has exhausted his administrative remedies with the EEOC, which issued Plaintiff a Notice of Right to Sue on or about September 27, 2016. Plaintiff's counsel received the Right to Sue Letter on October 3, 2016.

23. Because Plaintiff exhausted his administrative remedies with the EEOC, which issued a Notice of Right to Sue to Plaintiff on or about September 27, 2016, and that Plaintiff received on October 3, 2016, Plaintiff has also exhausted his administrative remedies with the District of Columbia Office of Human Rights and has a right to file the claims asserted herein under the DCHRA. *See Fowler v. District of Columbia*, 122 F. Supp. 2d 37, 42 (D.D.C. 2000).

**FIRST CAUSE OF ACTION**

**Hostile Work Environment, in Violation of Title VII, 42 U.S.C. § 2000e (as to Fort Myer)**

24. The allegations of the preceding paragraphs are re-alleged as if fully set forth below.

25. Because it is engaged in an industry affecting commerce and has 15 or more employees, at all relevant times herein Fort Myer was and is an "employer," pursuant to Title VII.

26. Fuhrman and Fort Myer engaged in discrimination against Plaintiff based on Plaintiff's protected status, as required by Title VII, 42 U.S.C. § 2000e-2(a)(1).

27. Fuhrman discriminated against Plaintiff by subjecting him to unwelcome racial harassment, as defined in *Jones v. Billington*, 12 F. Supp. 2d 1, 11 (D.D.C. 1997), by, among other things, ordering that Plaintiff perform core drilling work in the PEPCO vault for which he was not properly trained or certified; suspending Plaintiff for a day without pay; attempting to terminate Plaintiff on June 27, 2014; ordering Plaintiff to undergo training in unreasonable conditions; refusing Plaintiff's request for leave; refusing Plaintiff's offer to provide Fuhrman with the doctor's note on July 16, 2014; and by renewing his demand for Plaintiff's termination on July 16, 2014.

28. Fuhrman's unwelcome racial harassment of Plaintiff unreasonably interfered with his work performance, as articulated in *Clipper v. Billington*, 414 F. Supp. 2d 16, 24 (D.D.C. 2006).

29. Fuhrman's unwelcome racial harassment of Plaintiff was sufficiently severe to create a hostile work environment, as defined by *Park v. Howard University*, 71 F.3d 904, 906 (D.C. Cir. 1995); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); and *Kriesch v. Johanns*, 468 F. Supp. 2d 183, 187 (D.D.C. 2007).

30. Plaintiff informed Fort Myer's Human Resources Department of Fuhrman's harassment.

31. Because Fort Myer knew or should have known of Fuhrman's harassment of Plaintiff and failed to implement prompt and corrective action, Fort Myer engaged in racial discrimination against Plaintiff by enabling a hostile work environment, in violation of Title VII.

32. Plaintiff suffered damages as a result of Fuhrman's unwelcome racial harassment.

## SECOND CAUSE OF ACTION

### Termination of Employment, in Violation of Title VII, 42 U.S.C. § 2000e (as to Fort Myer)

33. The allegations of the preceding paragraphs are re-alleged as if fully set forth below.

34. Fort Myer discriminated against Plaintiff by terminating him on or about July 21, 2014, at Fuhrman's behest.

35. Fort Myer terminated Plaintiff on the basis of his race. Fort Myer had not previously terminated Caucasian employees who had doctor's notes justifying their absence from work based on injuries.

36. Fort Myer's termination of Plaintiff at Fuhrman's behest for supposedly missing work was a pretext that allowed Fort Myer to bring to fruition Fuhrman's plan to get rid of Plaintiff, and thereby remove the last African American member of Fort Myer's electrical division.

37. Fort Myer's termination of Plaintiff violated Title VII.

38. Fort Myer acted knowingly, willfully, and maliciously in terminating Plaintiff.

39. Fort Myer's intentional discrimination caused Plaintiff to suffer damages.

**THIRD CAUSE OF ACTION**

**Retaliation, in Violation of Title VII, 42 U.S.C. § 2000e (as to Fort Myer)**

40. The allegations of the preceding paragraphs are re-alleged as if fully set forth below.

41. Fuhrman retaliated against Plaintiff for having reported Fuhrman's racist comments to his immediate supervisor and to Human Resources. Fuhrman's acts of retaliation included his subjecting Plaintiff to "training" in unreasonable conditions; his continued assignment of Plaintiff to perform life-threatening core drilling work in a PEPCO vault for which Plaintiff was not sufficiently trained; his refusal to grant Plaintiff's reasonable request for leave; and his decision to terminate Plaintiff on or about July 16, 2014.

42. Fort Myer retaliated against Plaintiff for having reported Fuhrman's racist comments to Human Resources by terminating Plaintiff on July 21, 2016.

43. Fuhrman's and Fort Myer's acts of retaliation against Plaintiff violated Title VII, 42 U.S.C. § 2000e-16.

44. Defendants committed their acts of retaliation knowingly, willfully, and maliciously.

45. Defendants' acts of retaliation caused Plaintiff to suffer damages.

**FOURTH CAUSE OF ACTION**

**Hostile Work Environment, in Violation of the DCHRA, D.C. Code Ann. § 2-1401.01, *et seq.* (as to Fort Myer and Fuhrman)**

46. The allegations of the preceding paragraphs are re-alleged as if fully set forth below.

47. At all relevant times, Plaintiff was and is a member of a protected class as defined by the DCHRA, D.C. Code Ann. § 2-1401.01.

48. All all relevant times, Fort Myer was and is an "employer," pursuant to the DCHRA,

D.C. Code Ann. § 2-1401.02(10).

49. Fuhrman aided and abetted, and/or attempted to engage in and engaged in discriminatory acts forbidden by the DCHRA, D.C. Code Ann. § 2-1402.62, and explained in *Mitchell v. National R.R. Passenger Corp.*, 407 F. Supp. 2d 213, 241 (D.D.C. 2005).

50. Fuhrman subjected Plaintiff to unwelcome harassment, as defined in the DCHRA.

51. Fuhrman's unwelcome harassment of Plaintiff was based on his protected status.

52. Fuhrman's unwelcome harassment of Plaintiff was sufficiently severe to affect a term, condition, and/or privilege of Plaintiff's employment.

53. Plaintiff informed Fort Myer's Human Resources Department of Fuhrman's harassment.

54. Because Fort Myer knew or should have known of Fuhrman's harassment of Plaintiff and failed to implement prompt and corrective action, Fort Myer engaged in racial discrimination against Plaintiff by enabling a hostile work environment, in violation of the DCHRA.

55. Fuhrman's unwelcome harassment of Plaintiff caused Plaintiff to suffer damages.

**FIFTH CAUSE OF ACTION**

**Discrimination on the Basis of Race, in Violation of the DCHRA, D.C. Code Ann. § 2-1401.01, *et seq.* (as to Fort Myer and Fuhrman)**

56. The allegations of the preceding paragraphs are re-alleged as if fully set forth below.

57. Because of Plaintiff's race, Defendants treated him differently from similarly situated non-African American employees by, among other things, (a) imposing terms and conditions on his employment different from the other employees; (b) enforcing certain policies and practices against only him; (c) holding him to a greater or different performance standard; and (d) terminating him, despite Plaintiff's offer to provide a copy of a doctor's note.

58. Defendants engaged in this discrimination knowingly, maliciously, and with reckless indifference to Plaintiff's right under the DCHRA to be free of discrimination based on his race.

59. Defendants' discriminatory acts caused Plaintiff to suffer damages.

**SIXTH CAUSE OF ACTION**

**Retaliation, in Violation of the DCHRA, D.C. Code Ann. § 2-1401.01, *et seq.* (as to Fort Myer and Fuhrman)**

60. The allegations of the preceding paragraphs are re-alleged as if fully set forth below.

61. In good faith, Plaintiff engaged in protected activity under the DCHRA when he notified his immediate supervisor as well as Fort Myer's Human Resources Department of Fuhrman's racist comments and later complained to his immediate supervisor and Human Resources about the hostile work environment that Fuhrman had imposed on him.

62. Following Plaintiff's reporting of these acts of discrimination, Defendants took materially adverse actions against Plaintiff in retaliation for his opposition to Fuhrman's discriminatory and harassing conduct.

63. Defendants' retaliation against Plaintiff was knowing, willful, malicious, and without legitimate business justification.

64. Defendants' retaliation violated the DCHRA.

65. Defendants' retaliatory conduct directly and proximately caused Plaintiff to suffer damages.

**SEVENTH CAUSE OF ACTION**

**Discriminatory Subterfuge, in Violation of the DCHRA, D.C. Code Ann. § 2-1401.01, *et seq.* (as to Fort Myer and Fuhrman)**

66. The allegations of the preceding paragraphs are re-alleged as if fully set forth below.

67. Defendants discriminated against, harassed, retaliated against, and wrongfully terminated Plaintiff for reasons that would not have been asserted but for, wholly or partially, a discriminatory reason based on Plaintiff's race.

68. Defendants' subterfuge was knowing, willful, and malicious.

69. Defendants' subterfuge violated the DCHRA.

70. Defendants' subterfuge caused Plaintiff to suffer damages.

## PRAYER FOR RELIEF

WHEREFORE, and based on the foregoing acts of discrimination, Plaintiff respectfully requests that he be awarded the following relief:

A. Economic damages for actual monetary losses sustained as a direct result of the discrimination and compensation for any special damages sustained as a result of the discrimination;

B. Compensatory (non-economic) damages, including damages for mental and emotional distress;

C. Punitive damages to punish Defendants for knowing discrimination and retaliation and to deter them from similar conduct toward other employees;

D. Injunctive, declaratory or equitable relief, as may be appropriate, to prevent further harm to others and the public caused by Defendants; and

E. Reasonable litigation costs, expert fees and reasonable attorneys' fees, together with all other relief available from law and equity.

Respectfully submitted,

BIRAN KELLY LLC

Jonathan Biran
D.C. Bar No. 433066
201 N. Charles Street, Suite 2600
Baltimore, MD 21201
Tel: (410) 625-2500
Fax: (443) 773-0482
jbiran@birankelly.com

*Counsel for Plaintiff Ricardo Clemons*

**JURY DEMAND**

Plaintiff demands a jury for all issues proper to be so tried.

Jonathan Biran